# IN THE SUPREME COURT OF IOWA

No. 22–0101

Submitted January 18, 2023—Filed March 17, 2023

Amended March 21, 2023

**ESTATE OF ROBERTA ANN BUTTERFIELD** by **BRADLEY DEAN BUTTERFIELD** and **DEANNE MARIE ROGERS,** Co-Administrators,

Appellants,

vs.

**CHAUTAUQUA GUEST HOME, INC.** d/b/a **CHAUTAUQUA GUEST HOME #3** and **CHAUTAUQUA GUEST HOMES,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Floyd County, Colleen D. Weiland, Judge.

The supreme court reviews a court of appeals decision affirming the dismissal of a medical malpractice lawsuit with prejudice for failing to comply with the Iowa Code section 147.140(1)(*a*) certificate of merit affidavit requirement. **DECISION OF COURT OF APPEALS VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED IN PART AND REMANDED.**

Christensen, C.J., delivered the opinion of the court, in which Waterman, Mansfield, McDonald, and Oxley, JJ., joined. May, J., filed an opinion concurring in part and dissenting in part, in which McDermott, J., joined.

Jeffrey A. Pitman (argued) of Pitman, Kalkhoff, Sicula & Dentice, S.C., Milwaukee, Wisconsin, and John T. Hemminger of Law Offices of John T. Hemminger, Des Moines, for appellant.

Joseph D. Thornton (argued) of Smith Peterson Law Firm, LLP, Council Bluffs, for appellees.

**CHRISTENSEN, Chief Justice.**

In this medical malpractice case, a decedent's estate brings suit against a nursing home, alleging various omissions and failures. Although the estate filed suit in a timely manner, it did not serve a certificate of merit affidavit on the defendants. Consequently, the nursing home moved to dismiss the claims against it with prejudice, as provided under Iowa Code section 147.140 (2021). In response, the estate argued the certificate of merit was unnecessary because that requirement does not apply to plaintiffs who need experts solely for causation (as opposed to the standard of care or breach). The district court disagreed and dismissed all of the estate's claims. The court of appeals affirmed.

Upon review, we reverse the court of appeals in part and conclude the certificate of merit requirement does not apply to the plaintiffs who need experts solely for causation. With respect to the remaining issues on appeal, we let the court of appeals decision stand. Because it is not clear which of the plaintiff's claims needed an expert only to establish causation and were therefore not subject to the certificate of merit requirement, we also remand this case to the district court to determine which of the plaintiff's claims survive the failure to file the certificate of merit.

**I. Background Facts and Proceedings.**

The well-pleaded facts of this case center on injuries that Roberta Butterfield allegedly sustained in the care of Chautauqua Guest Home, Inc., a skilled nursing facility. Butterfield resided at Chautauqua, starting in October 26, 2017. On May 19, 2018, almost exactly one year before her death,

Butterfield's leg popped while Chautauqua caretakers were transferring her from the bathroom to a wheelchair. Six days later, Chautauqua transferred Butterfield to the hospital, where she was diagnosed with a left hip fracture. The fracture required surgery, which was performed on May 27.

Butterfield returned to Chautauqua on June 1. At that time, she did not suffer from any pressure injuries or skin problems. For the next several months, Butterfield spent a significant amount of time in bed. By January 10, 2019, a blister had developed on Butterfield's left buttock. It measured about 0.8 centimeters by 1 centimeter. By February 28, the blister had grown to about 2.8 centimeters by 3 centimeters by 1.8 centimeters. By April 3, the blister was 7.5 centimeters by 2 centimeters by 4 centimeters. Sometime between February and April, the blister became infected and started to emit a foul odor. Butterfield died on May 18.

About a year later, on April 20, 2020, Butterfield's estate (the Estate) filed the medical malpractice lawsuit on appeal here. Chautauqua answered on May 21. The parties agreed to a discovery plan on June 15, which the district court approved on June 16. The parties submitted initial disclosures during July and continued conducting discovery for the next year. Then, on July 16, 2021, Chautauqua filed a motion to dismiss with prejudice pursuant to Iowa Code section 147.140. The district court conducted a hearing on August 31, which resulted in an order sustaining the motion to dismiss. After the district court rejected the Estate's motion to reconsider, the Estate appealed. We transferred

that appeal to the court of appeals, which affirmed the district court. The Estate's request for further review was granted.

## II. Standard of Review.

Under Iowa Code section 147.140, "[w]e review both a motion to dismiss and a district court's statutory construction for correction of errors at law." *Ronnfeldt v. Shelby Cnty. Chris A. Myrtue Mem'l Hosp.*, 984 N.W.2d 418, 421 (Iowa 2023) (citing *Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 538 (Iowa 2022)).

## III. Analysis.

In this case, the Estate principally argues that its petition should not have been dismissed because Iowa Code section 147.140 does not apply. On that point, we reverse the court of appeals in part and find that the district court properly dismissed any claims for which the Estate needed expert testimony about the standard of care or breach. We also find that it erred by dismissing claims for which the Estate did not need an expert for standard of care or breach. We let the court of appeals decision stand on the Estate's remaining attempts to avoid the certificate of merit requirement, including its litigation waiver, substantial compliance, and contract-based arguments. *See Farnsworth v. State*, 982 N.W.2d 128, 135 (Iowa 2022).

**A. The New Requirements in Iowa Code Section 147.140.** Before our analysis of the merits, we review the pertinent provisions of section 147.140. Iowa Code section 147.140, which was enacted in 2017, established new procedural requirements for plaintiffs in some medical malpractice lawsuits. *See*

2017 Iowa Acts ch. 107, § 4 (codified at Iowa Code § 147.140(1)(2018)); *Struck*, 973 N.W.2d at 538. Pursuant to this section, the new requirements apply to personal injury or wrongful-death actions against medical professionals, including "cause[s] of action for which expert testimony is necessary to establish a prima facie case." Iowa Code § 147.140(1)(*a*).

According to these requirements, plaintiffs must serve the defendant with a certificate of merit, which is "an affidavit signed by an expert witness stating the appropriate standard of care and its alleged breach." *Morrow v. United States*, 47 F.4th 700, 702–03 (8th Cir. 2022); *see also* Iowa Code § 147.140(1)(*a*)–(*b*). Plaintiffs must serve the certificate within sixty days of the defendant's answer. *Morrow*, 47 F.4th at 702–03; *see also* Iowa Code § 147.140(1)(*a*).

Importantly, noncompliance carries a "harsh" consequence. *McHugh v. Smith*, 966 N.W.2d 285, 289 (Iowa Ct. App. 2021). The statute provides for dismissal with prejudice "upon motion" of the causes of action that require expert testimony if a plaintiff fails to substantially comply with the certificate of merit requirement. Iowa Code § 147.140(6) ("Failure to substantially comply with subsection 1 shall result, upon motion, in dismissal with prejudice of each cause of action as to which expert witness testimony is necessary to establish a prima facie case.").

We have previously explained that section 147.140 "is meant to end cases *early* (sixty days after the answer) when expert testimony is required." *Struck*, 973 N.W.2d at 542. The statute is also designed "to 'identify and weed non-meritorious malpractice claims from the judicial system efficiently and

promptly,' " *id.* (quoting *Womer v. Hilliker*, 908 A.2d 269, 275 (Pa. 2006)), and "deter . . . frivolous actions . . . to thereby reduce the cost of medical malpractice litigation and medical malpractice insurance premiums," *id.* (quoting *Rabinovich v. Maimonides Med. Ctr.,* 113 N.Y.S.3d 198, 201 (App. Div. 2019)).

**B. Whether a Certificate of Merit Affidavit Is Required in This Case.** The Estate's primary argument is that the certificate of merit requirement does not apply in this case because an expert is not necessary to establish the elements of its prima facie case. Chautauqua, in turn, contends that all elements of the Estate's claims depend on medical judgment and therefore require experts, triggering the certificate of merit requirement.

1. *Relevant principles of statutory interpretation.* "As with all cases involving statutory interpretation, we start with the language of the statute to determine what the statute means." *Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 680 (Iowa 2022). When a statute's text and meaning is clear, "we will not search for a meaning beyond the express terms of the statute or resort to rules of construction." *Com. Bank v. McGowen*, 956 N.W.2d 128, 133 (Iowa 2021) (quoting *In re Est. of Voss*, 553 N.W.2d 878, 880 (Iowa 1996)). "However, 'if reasonable minds could differ or be uncertain as to the meaning of the statute' based on the context of the statute, the statute is ambiguous and requires us to rely on principles of statutory construction to resolve the ambiguity." *State v. Coleman*, 907 N.W.2d 124, 135 (Iowa 2018) (quoting *State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 471 (Iowa 2017)).

Thus, "[t]he first step in our statutory interpretation analysis is to determine whether the statute is ambiguous." *State v. Zacarias*, 958 N.W.2d 573, 581 (Iowa 2021) (quoting *State v. Ross*, 941 N.W.2d 341, 346 (Iowa 2020)). But a statute is not ambiguous merely because two litigants disagree about its meaning. *Carreras v. Iowa Dep't of Transp., Motor Vehicle Div.*, 977 N.W.2d 438, 456 (Iowa 2022) (McDermott, J., concurring in part and dissenting in part) ("Declaring ambiguity whenever skilled lawyers offer divergent meanings for phrases would unnecessarily launch us into ambiguity-resolving canons in most of our cases."). "Ambiguity may arise from specific language used in a statute or when the provision at issue is considered in the context of the entire statute or related statutes." *The Sherwin–Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 425 (Iowa 2010) (quoting *Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 425 (Iowa 2002)).

2. *Section 147.140(1) is ambiguous.* Iowa Code section 147.140(1) sends mixed messages as to when a certificate of merit is required. The statute says it applies to any action in which an expert is needed to establish a prima facie case, but then it only requires the expert to address the standard of care and breach elements in the certificate of merit. *See id.* So, is a certificate of merit required in any medical malpractice action where expert testimony is necessary to establish any part of the *prima facie case* or only when an expert is needed to establish either the *standard of care or breach*? The first part of section 147.140(1)(*a*) implies the former, whereas the second part implies the latter:

> In any action for personal injury or wrongful death against a health care provider based upon the alleged negligence in the practice of that profession or occupation or in patient care, *which includes a cause of action for which expert testimony is necessary to establish a prima facie case*, the plaintiff shall . . . serve upon the defendant a certificate of merit affidavit signed by an expert witness *with respect to the issue of standard of care and an alleged breach of the standard of care.*

Iowa Code § 147.140(1)(*a*) (emphasis added). Section 147.140(1)(*b*) also implies the latter by requiring the certificate of merit to include "(1) [t]he expert witness's statement of familiarity with the applicable standard of care" and "(2) [t]he expert witness's statement that the standard of care was breached by the health care provider named in the petition." *Id.* § 147.140(1)(*b*). Regarding cases in which expert testimony is necessary only to establish other elements of a prima facie case, such as causation or damages, the statute does not explain whether a certificate of merit is required. With one part of subsection (*a*) appearing to require a certificate of merit only when an expert is needed to establish the standard of care or breach, while another part implies the certificate of merit is necessary when an expert is needed to establish any prima facie element of the case, we conclude section 147.140(1)(*a*) is ambiguous.

To be clear, this ambiguity exists in the statute's context. *See Iowa Ins. Inst. v. Core Grp. of the Iowa Ass'n for Just.*, 867 N.W.2d 58, 72 (Iowa 2015) ("[E]ven if the meaning of words might seem clear on their face, their context can create ambiguity."). The statute is ambiguous because of an inconsistency between the text that triggers the certificate of merit requirement[1] and the text

---

[1]The statute's trigger language is as follows: "In any action for personal injury or wrongful death against a health care provider based upon the alleged negligence in the practice of that

that explains what must be included in the certificate of merit.[2] In many cases, we have identified statutory text that, although clear in isolation, becomes ambiguous in a statute's broader context. *See Iowa Ins. Inst.*, 867 N.W.2d at 72–73 (finding the phrase "all information" ambiguous when taking surrounding statutory subsections into account); *U.S. Bank Nat. Ass'n v. Lamb*, 874 N.W.2d 112, 117 (2016) (deciding the phrase "all liens" is "sufficiently ambiguous" in light of the phrase's location and the fact the statute appeared to operate narrowly). Such is the case here.

3. *Resolving the ambiguity.* We use the tools of statutory construction to construe ambiguous statutes. *State v. Mathias*, 936 N.W.2d 222, 227 (Iowa 2019); *see also* Iowa Code § 4.6 (recommending seven potential tools for construing ambiguous statutes, including legislative history and policy statements). "One such tool is legislative history." *State v. Gross*, 935 N.W.2d 695, 703 (Iowa 2019) (citing Iowa Code § 4.6(3); *State v. Doe*, 903 N.W.2d 347, 352 (Iowa 2017)); *see also* Iowa Code § 4.6(3) ("If a statute is ambiguous, the court, in determining the intention of the legislature, may consider. . . [t]he legislative history."). Legislative history that shows a bill's changes over the course of its enactment can be especially revealing. When the legislature eliminates a provision during the debate process, "the statute should not be construed" in a way that gives effect to the eliminated provision. *Chelsea Theater*

---

profession or occupation or in patient care, which includes a cause of action for which expert testimony is necessary to establish a prima facie case . . . ." Iowa Code § 147.140(1)(*a*).

[2]The statute requires that certificates of merit must be "signed by an expert witness with respect to the issue of standard of care and an alleged breach of the standard of care." *Id.*

*Corp. v. City of Burlington*, 258 N.W.2d 372, 374 (Iowa 1977) (citing *Lenertz v. Mun. Ct.*, 219 N.W.2d 513, 516 (Iowa 1974)); *see also United Elec., Radio & Mach. Workers of Am. v. Iowa Pub. Emp. Rels. Bd.*, 928 N.W.2d 101, 110–11 (Iowa 2019) (relying on the omission of a text in a bill during the legislative process as a tool of statutory construction); *State v. DeSimone*, 839 N.W.2d 660, 667–68 (Iowa 2013) (same).

In this case, legislative history is particularly helpful. There were three drafts of bills that contained the certificate of merit requirement: two study bills and a house file bill. *See* S.S.B. 1087, 87th G.A., 2d sess., § 5(1)(*a*), (*b*)(4) (Iowa 2017); H.S.B. 105, 87th G.A., 2d sess., § 5(1)(*a*), (*b*)(4) (Iowa 2017); H.F. 487, 87th G.A. sess., § 3(1)(*a*), (*b*)(4) (Iowa 2017). The text of each of the three bills requires that the certificate of merit attest to the standard of care, breach, *or causation*. The relevant explanation section of each bill confirms, saying the proposed language would require plaintiffs to secure certificates of merit that speak to the standard of care, breach, *and causation*. The enacted language, however, says nothing about causation. *See* 2017 Iowa Acts ch. 107, § 4 (codified at Iowa Code § 147.140 (2018)). Additionally, the draft bills gave plaintiffs ninety days to serve a certificate of merit, but the enacted statute reduced that time to sixty days. *See id.*

The fact that the legislature removed the word "causation" tells us a great deal. We infer that the legislature did not intend the certificate of merit requirement in section 147.140(1)(*a*) to reach questions of causation. At some point, the legislature considered requiring plaintiffs to obtain a certificate of

merit by an expert about the standard of care, breach, and causation to obtain its objectives. But clearly the legislators changed course, perhaps deciding that they did not want to require plaintiffs to certify causation issues so early in litigation. This view is further supported by the thirty-day reduction in the time for serving defendants with a certificate of merit. We conclude Iowa Code section 147.140(1)(*a*) does not require plaintiffs to submit certificates of merit attesting to causation even though expert testimony about causation is necessary for the plaintiff to state a prima facie case.

Another tool of statutory construction is the consequences of a particular construction. Iowa Code § 4.6(5) ("If a statute is ambiguous, the court, in determining the intention of the legislature, may consider . . . [t]he consequences of a particular construction."). When choosing among various ways to construe an ambiguous statute, courts should choose a construction that is sensical and reasonable. *See Naumann v. Iowa Prop. Assessment Appeal Bd.*, 791 N.W.2d 258, 262 (Iowa, 2010) (using rules of construction to interpret an ambiguous statute in a way that avoids strained or impractical results). Chautauqua argues that section 147.140 requires a certificate of merit about the standard of care and breach, even if the plaintiff only needs an expert for causation. As stated above, it makes no sense to require a party to hire an expert just to fill out a certificate of merit when no expert is necessary for those elements. In the same way, it would be illogical to say section 147.140 requires a plaintiff who obtains expert testimony for causation or damages to submit a certificate of merit regarding the standard of care and breach. Rather, it is reasonable to conclude there is no

need for a certificate of merit about the standard of care and breach when an expert is needed for neither of those elements.

We find support for our conclusion when we compare section 147.140 to similar statutes in other states. As we explained in *Struck v. Mercy Health Services-Iowa Corp.*, "At least twenty-eight other states have enacted certificate or affidavit of merit statutes." 973 N.W.2d at 541. Like Iowa's section 147.140, some states require certificates of merit that attest to just the standard of care and breach. *See, e.g.*, Miss. Code Ann. § 11-1-58(1)(a) (2022). On the other hand, like Iowa's earlier drafts of legislative bills, many other states require certificates of merit regarding the standard of care, breach, and causation. *See, e.g.*, Mo. Rev. Stat. § 538.225(1) (2022); Vt. Stat. Ann. tit. 12, § 1042(a)(3) (West 2022). Clearly, different jurisdictions have pursued various means to achieve the goal of nipping frivolous medical malpractice lawsuits in the bud. These variations make us confident that our legislature made a conscious policy decision, not merely a mistake, when it removed the word "causation" from section 147.140(1)(*a*).

4. *The Estate may need expert testimony to establish the standard of care and breach, which would trigger the certificate of merit affidavit requirement.* "It is well settled that expert testimony is required to prove professional negligence claims against healthcare providers." *Struck*, 973 N.W.2d at 539. "Ordinarily, evidence of the applicable standard of care—and its breach—must be furnished by an expert." *Id.* (quoting *Oswald v. LeGrand*, 453 N.W.2d 634, 635 (Iowa 1990)).

Yet we have recognized some professional breaches are so blatant that expert testimony is not required for them. *Id.* at 539, n.4. These are breaches in which "the physician's lack of care is so obvious as to be within the comprehension of a lay[person] and requires only common knowledge and experience to understand." *Id.* (alteration in original) (quoting *Oswald,* 453 N.W.2d at 636). Essentially, expert testimony about the standard of care and breach is not necessary when "the rule of res ipsa loquitur applies," such as "where a sponge, gauze, an instrument, or [a] needle has been left in the body." *Whetstine v. Moravec,* 291 N.W. 425, 436 (Iowa 1940); *see also Donovan v. State,* 445 N.W.2d 763, 766 (Iowa 1989) ("If a doctor operates on the wrong patient or amputates the wrong limb, a plaintiff would not have to introduce expert testimony to establish that the doctor was negligent.").

But there is another separate set of circumstances in which expert testimony about the standard of care and breach is not required. Medical professionals frequently provide "nonmedical, administrative, ministerial, or routine care" *Kastler v. Iowa Methodist Hosp.,* 193 N.W.2d 98, 101 (Iowa 1971). For those types of care, expert testimony about the standard of care and breach is not needed because medical professionals are obliged to offer merely "such reasonable care for patients as their known mental and physical condition may require." *Id.* at 102. We have held that nonmedical or routine care includes helping patients shower, *see id.,* and properly repositioning patients to prevent pressure injuries (such as bedsores), *see Thompson v. Embassy Rehab. & Care Ctr.,* 604 N.W.2d 643, 646 (Iowa 2000). In contrast, we have also held that expert

testimony is required to ascertain the standard of care for forcing patients to reposition against their will in order to prevent pressure injuries and deciding the timing of a surgery, because those actions require medical judgment. *Id.*

All in all, we have distilled these principles into the following test:

[I]f all the primary facts can be accurately and intelligibly described to the jury, and if they, as [persons] of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation, [expert testimony is not required].

*Struck*, 973 N.W.2d 533 at 543 (alterations in original) (quoting *Thompson*, 604 N.W.2d at 646).

In this case, we remand to the district court the question of whether expert testimony is necessary with respect to the issue of standard of care and breach. The Estate's petition presents a litany of failures on the part of Chautauqua, and Chautauqua argues in response that the Estate needs experts for all the elements of its claims. Because the Estate never served a certificate of merit, the district court should dismiss with prejudice any allegations that require expert testimony regarding standard of care and breach. For the reasons stated, the need for expert testimony about causation does not trigger the certificate of merit affidavit requirement.

**IV. Conclusion.**

For the foregoing reasons, we reverse the court of appeals decision in part. We reverse the district court judgment and remand the case, and we need not address the remaining issues on appeal.

**DECISION OF COURT OF APPEALS VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED IN PART AND REMANDED.**

Waterman, Mansfield, McDonald, and Oxley, JJ., join this opinion. May, J., files an opinion concurring in part and dissenting in part, in which McDermott, J., joins.

**MAY, Justice (concurring in part and dissenting in part).**

If a plaintiff needs an expert to establish "a prima facie case" of medical negligence, Iowa Code section 147.140 (2021) requires the plaintiff to serve a certificate of merit affidavit. The question here is whether causation is part of "a prima facie case" of medical negligence. The answer is certainly "yes." But the majority's holding implies that the answer is "no." I respectfully dissent. Because the Estate of Roberta Butterfield needed an expert to establish causation, the Estate needed an expert to establish "a prima facie case," and a certificate of merit was required. The district court and court of appeals were right. We should affirm.

**I. An Alternative Approach to Section 147.140.**

We should find a statute's meaning in the "text of the statute," the "words chosen by the legislature." *State v. Childs*, 898 N.W.2d 177, 184 (Iowa 2017) (quoting *State v. Iowa Dist. Ct.*, 730 N.W.2d 677, 679 (Iowa 2007)). Here are the relevant words of Iowa Code section 147.140(1)(*a*):

> *In any action for personal injury or wrongful death against a health care provider based upon the alleged negligence in the practice of that profession or occupation or in patient care, which includes a cause of action for which expert testimony is necessary to establish **a prima facie case**, the plaintiff shall, prior to the commencement of discovery in the case and within sixty days of the defendant's answer, serve upon the defendant a certificate of merit affidavit signed by an expert witness with respect to the issue of standard of care and an alleged breach of the standard of care.*

(Emphasis added.)

In *Struck v. Mercy Health Services-Iowa Corp.*, 973 N.W.2d 533 (Iowa 2022), we parsed these words and correctly determined their meanings. "[A] certificate of merit is required," we said, "when a plaintiff pleads (1) an 'action for personal injury or wrongful death,' (2) 'against a health care provider,' (3) which is 'based upon the alleged negligence in the practice of that profession or occupation or in patient care,' and (4) 'includes a cause of action for which expert testimony is necessary to establish a prima facie case.' " *Id.* at 540 (quoting Iowa Code § 147.140(1)(*a*)).

Here, it is undisputed that *Struck*'s first three criteria are met. No one disputes that the Estate has pleaded "(1) an 'action for personal injury or wrongful death,' (2) 'against a health care provider,' (3) which is 'based upon the alleged negligence in the practice of that profession or occupation or in patient care.' " *Id.* (quoting Iowa Code § 147.140(1)(*a*)). The only question here concerns the fourth criterion: does the Estate's case "include[] a cause of action for which expert testimony is necessary to establish *a prima facie case*"? *Id.* (emphasis added) (quoting Iowa Code § 147.140(1)(*a*)). It does.

Again, the starting place is *Struck*. There we said that to establish a "prima facie case" of medical negligence, "a plaintiff must produce evidence that (1) establishes the applicable standard of care, (2) demonstrates a violation of this standard, and (3) *develops a causal relationship between the violation and the injury sustained.*" *Id.* at 539 (emphasis added) (quoting *Oswald v. LeGrand*, 453 N.W.2d 634, 635 (Iowa 1990)). So, a medical-negligence plaintiff (like the Estate) cannot establish a prima facie case without establishing causation. *Id.* at 540;

*see, e.g.*, *Susie v. Fam. Health Care of Siouxland, P.L.C.*, 942 N.W.2d 333, 337 (Iowa 2020) (agreeing that evidence "failed to establish the causation element of Susies' prima facie case" of medical malpractice). And so, if expert testimony is necessary to establish causation, then expert testimony is necessary to establish a prima facie case.

The Estate needs expert testimony to establish causation. Both the district court and the court of appeals found that this is true.[3] The majority does not dispute those findings. Nor do I.

Because the Estate needs expert testimony to establish causation, "expert testimony is necessary" for the Estate "to establish a prima facie case." Iowa Code § 147.140(1)(*a*); *see Schmitt v. Floyd Valley Healthcare*, No. 20–0985, 2021 WL 3077022, at *2 (Iowa Ct. App. July 21, 2021) (concluding that—even though "the breach of the standard of care [was allegedly] so clear as to be obvious to a layperson"—"expert witness testimony [wa]s necessary to establish a prima fac[i]e case" because "causation still required expert testimony"). And because expert testimony is necessary for the Estate to establish a prima facie case, section 147.140 required the Estate to timely serve a certificate of merit. But the Estate did not timely serve a certificate of merit. So the district court was

---

[3]The district court found: "To the extent that a breach [of the standard of care] might be evident to laypersons without expert testimony, causation is not." The court of appeals agreed:

> We do not believe that understanding the causation behind a subtrochanteric intertrochanteric hip fracture, an ischial pressure injury, or the death of a woman with a myriad of underlying health conditions is within the common knowledge of a non-medically trained person. Therefore, expert witness testimony was needed with respect to the element of causation . . . .

required to dismiss the Estate's case, Iowa Code § 147.140(6), and the court of appeals was required to affirm. We should affirm both courts.

**II. Is It Really that Simple?**

Although it's possible that I've overlooked something, I see no reason why we shouldn't follow the straight-forward approach outlined above. I see no valid path to the contrary conclusion that *even though* the statute plainly requires a certificate of merit whenever a plaintiff needs an expert to establish a prima facie case, and *even though* a prima facie case most certainly includes causation, and *even though* the Estate needs an expert to establish causation, the Estate somehow *didn't* need to serve a certificate of merit.

The only option, I think, would be to say that a prima facie case doesn't require causation. But no one thinks that's true. Just last year, our unanimous *Struck* opinion said that—in the context of section 147.140—a prima facie case of medical negligence includes causation. *Struck*, 973 N.W.2d at 538–39. And *Struck* was absolutely right. It is blackletter that when a statute includes a legal term that has an established legal meaning in a specific legal context, we give that term its established legal meaning. *E.g. Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 682 (Iowa 2022) (citing authorities). Section 147.140 deals with a very specific legal context: medical negligence lawsuits. In the context of medical negligence lawsuits, the term "prima facie case" has only one meaning—and it is exceptionally well-established. It is the same three-element meaning that *Struck* used. And causation is always one of those three elements. *See Struck*, 973 N.W.2d at 538–39 (stating that a prima facie case of medical negligence requires

evidence of three elements: (1) the standard of care, (2) a violation of the standard of care, and (3) a causal relationship between a violation of the standard of care and the injury sustained)*; Susie*, 942 N.W.2d at 337 (same); *Eisenhauer ex rel. Conservatorship of T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 9 (Iowa 2019) (same); *Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 401 (Iowa 2017) (same); *Lobberecht v. Chendrasekhar*, 744 N.W.2d 104, 108 (Iowa 2008) (same); *Peppmeier v. Murphy*, 708 N.W.2d 57, 61–62 (Iowa 2005) (same); *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001) (en banc) (same); *Graeve v. Cherny*, 580 N.W.2d 800, 801–02 (Iowa 1998) (same); *Kennis v. Mercy Hosp. Med. Ctr.*, 491 N.W.2d 161, 165 (Iowa 1992) (same); *Oswald*, 453 N.W.2d at 635 (same); *Cole v. Taylor*, 301 N.W.2d 766, 767 (Iowa 1981) (same); *Daboll v. Hoden*, 222 N.W.2d 727, 734 (Iowa 1974) (same); *Zaw v. Birusingh*, 974 N.W.2d 140, 160 (Iowa Ct. App. 2021) (same); *Hill v. McCartney*, 590 N.W.2d 52, 56 (Iowa Ct. App. 1998) (same); *Bazel v. Mabee*, 576 N.W.2d 385, 387 (Iowa Ct. App. 1998) (same).[4]

Because the Estate needed an expert to establish causation, the Estate needed an expert to establish a prima facie case. This triggered the certificate of merit requirement, which the Estate did not meet. It really is that simple.

### III. The Majority's Approach.

The majority's approach offers no viable escape from this conclusion. Before diving into the specifics, though, I would make one general comment. One

---

[4]Indeed, causation is a required element—that may require expert testimony—even when res ipsa loquitor applies. *Kennis*, 491 N.W.2d at 167.

of my main differences with the majority is their focus on the required *contents* of a certificate of merit. This case isn't about the *contents* of a certificate of merit. There was *no* certificate. The Estate didn't serve one. So there are no *contents* to evaluate. Rather, our only task here is to decide whether the Estate was required to serve *any* certificate of merit *at all.* If no certificate was required, dismissal was improper, and we should reverse. If *any* certificate was required, then dismissal was proper, and we should affirm. Because I think a certificate was required, I think we should affirm.

With that as background, I turn to the majority's specific points. In brief summary, the majority contends that (1) because the statute is ambiguous, we can look beyond the statutory text to (2) legislative history and (3) a reasonableness inquiry, (4) all of which suggest that a certificate of merit was not required in this case. I respectfully disagree with each of these points.[5]

**A. Is the Statute Ambiguous About When a Certificate of Merit Affidavit Is Required?** I start with the majority's central premise—that section 147.140 is ambiguous about when a certificate of merit is required. In the majority's view, this ambiguity opens the door to reliance on legislative history and other matters outside of the statute's text.

---

[5]The majority also compares our statute with other states' statutes. I agree that these other statutes show that there were other ways that our legislature could have written section 147.140. And I agree that our legislature made conscious policy decisions when it chose the words of section 147.140. I conclude that we should give effect to the legislature's chosen words, including the phrase "prima facie case," which unambiguously includes causation in this medical-negligence context.

I note, though, that the Estate made no ambiguity argument in its appellate briefs. And the court of appeals decided the Estate's appeal without oral argument. So the court of appeals never heard any arguments about ambiguity. Rather, the Estate first mentioned ambiguity in its petition for further review. But "[w]e generally will not consider issues raised for the first time . . . in an application for further review." *State v. Shackford*, 952 N.W.2d 141, 147–48 (Iowa 2020). I see no reason to make an exception.

In any event, I can find no meaningful ambiguity here. Like the majority, I think "a statute is not ambiguous merely because two litigants disagree about its meaning." And I agree with Justice McDermott that "[d]eclaring ambiguity whenever skilled lawyers offer divergent meanings for phrases would unnecessarily launch us into ambiguity-resolving canons in most of our cases." *Carreras v. Iowa Dep't of Transp.*, 977 N.W.2d 438, 456 (Iowa 2022) (McDermott, J., concurring in part and dissenting in part). Instead, we should limit declarations of ambiguity to situations in which the operative statutory words are "susceptible to more than one reasonable meaning." *State v. Rodgers*, 560 N.W.2d 585, 586 (Iowa 1997); *see State v. Mathias*, 936 N.W.2d 222, 228 (Iowa 2019) (finding ambiguity where language had "multiple reasonable meanings").

That's not the case here. As the statute makes clear—and as we verified in *Struck*—"a certificate of merit is required" whenever the petition " 'includes a cause of action for which expert testimony is necessary to establish a prima facie case.' " *Struck*, 973 N.W.2d at 540 (quoting Iowa Code § 147.140(1)(*a*)). And the phrase "a prima facie case" does not have "more than one reasonable meaning"

in this context. *Rodgers*, 560 N.W.2d at 586. The only reasonable meaning is the three-element meaning stated in *Struck*, which includes a causation requirement. No reasonable meaning of "prima facie case" excludes causation. So, because the Estate's claims require expert testimony to establish causation, those claims require expert testimony to establish a prima facie case, and therefore "a certificate of merit is required." *Struck*, 973 N.W.2d at 540.

The majority deploys two counter-arguments. First, the majority suggests that there is ambiguity because "the statute does not explain whether a certificate of merit is required" when a plaintiff (like the Estate) will need expert testimony to establish one essential part of "a prima facie case"—causation—but not to establish other parts—standard of care and breach. I respectfully disagree. The statute unambiguously requires a certificate of merit whenever expert testimony is needed to establish "a prima facie case." And just as a pizza needs a crust, a "prima facie case" requires causation. So if expert testimony is needed to establish causation, then expert testimony is needed to establish "a prima facie case," and the certificate is required. It is required *regardless* of whether expert testimony will *also* be needed for *other* issues, like standard of care, breach, damages, or anything else.

Next the majority argues that there is ambiguity because "one part" of section 147.140(1)(*a*) "appear[s] to require" a certificate "only when an expert is needed to establish the standard of care or breach" but "another part implies" that a certificate "is necessary when an expert is needed to establish any prima facie element of the case." I respectfully disagree. This analysis confuses (1) the

statute's *trigger* conditions, i.e., *when* a certificate is required; with (2) the statute's *content* requirements, i.e., *what* a certificate needs to say. To understand why, it helps to look at section 147.140(1)(*a*) as a whole:

> 1. *a. In any action for personal injury or wrongful death against a health care provider based upon the alleged negligence in the practice of that profession or occupation or in patient care, which includes a cause of action for which expert testimony is necessary to establish a prima facie case*, the plaintiff shall, prior to the commencement of discovery in the case and within sixty days of the defendant's answer, serve upon the defendant a certificate of merit affidavit signed by an expert witness with respect to the issue of **standard of care and an alleged breach of the standard of care**. The expert witness must meet the qualifying standards of section 147.139.

Iowa Code § 147.140(1)(*a*) (emphases added).

Let's start with the trigger conditions—the circumstances when a certificate is required—shown in the italicized text. As we said in *Struck*, this text clearly requires a certificate whenever there's a claim "*for which expert testimony is necessary to establish a prima facie case.*" 943 N.W.2d at 540 (quoting Iowa Code § 147.140(1)(*a*)).

Next, let's look at the content requirements—the topics that a certificate must address—shown in the bold text. This text is also clear: a certificate must address the "**standard of care and an alleged breach of the standard of care**."

Now, if we read these provisions together, we can easily understand the statute's meaning. A certificate is required if a plaintiff pleads a claim "*for which expert testimony is necessary to establish a prima facie case.*" A certificate must contain expert statements about the "**standard of care**" and the "**alleged breach**

**of the standard of care**." There's no uncertainty about (1) when a certificate is required or (2) what it must contain. There's no ambiguity.

Of course, I understand the majority's curiosity about why the legislature would (1) require a certificate for all cases in which expert testimony is necessary to establish a prima facie case, which includes standard of care, breach, and causation; but (2) only require that the certificate address standard of care and breach. While this asymmetry is interesting, though, it is not outside the range of reasonable options from which our legislature could properly choose. (More on this later.) In any event, it doesn't create any *ambiguity* about *when a certificate is required.* It doesn't create multiple reasonable meanings for "prima facie case," the unambiguous trigger phrase. It gives no reason to think that causation is not a part of "prima facie case." It provides no basis to conclude that "prima facie case" could mean *only* "standard of care" and "breach." Indeed, the statute's asymmetry *confirms* that "prima facie case" means *something different* than just "standard of care" and "breach." Otherwise, there would have been no reason for the legislature to use "prima facie case" near the start of section 147.140(1)(*a*) and then use different terms—"standard of care" and "breach"— later in the same section. *Miller v. Marshall County*, 641 N.W.2d 742, 749 (Iowa 2002) ("We assume the legislature intends different meanings when it uses different terms in different portions of a statute."). We should honor that legislative choice by giving "prima facie case" its own particular meaning, which must include causation. And so, because the Estate's claims required expert

testimony to establish causation, we should acknowledge that the certificate requirement was triggered.

**B. Does Legislative History Require a Different Answer?** I also respectfully disagree with the majority's reliance on legislative history to support interpretations that contradict the plain meaning of the enacted text. *See, e.g.*, *Koehler v. Hill*, 14 N.W. 738, 767 (Iowa 1883) (Beck, J., dissenting) ("The enrolled statute, being the final expression of the legislative will, overcomes all journal entries which contradict it."). "It is our duty to accept the law as the legislative body enacts it." *Holland v. State*, 115 N.W.2d 161, 164 (Iowa 1962). Like Justice McDermott, I worry that focusing on legislative history can easily "divert[] us" from our duty to give "effect to the text that lawmakers have adopted and that the people are entitled to rely on." *State v. Davison*, 973 N.W.2d 276, 293 (Iowa 2022) (McDermott, J., concurring specially).

In any event, the available history *contradicts* the majority's suggestion that "the legislature did not intend the certificate of merit requirement . . . to reach questions of causation." To help explain why this is true, I have created the table below. In the left column, you can see the unenacted bill language on which the Estate relies. In the right column, you can see the enacted text of section 147.140(1)(*a*).

| Unenacted Language from House and Senate Bills[6] | Enacted Language in Section 147.140(1)(*a*)[7] |
|---|---|
| *In any action for personal injury or wrongful death against a health care provider based upon the alleged negligence in the practice of that profession or occupation or in patient care, including a cause of action for which expert testimony is necessary to establish a prima facie case*, the plaintiff shall, within ninety days of the defendant's answer, serve upon the defendant a certificate of merit affidavit for each expert witness listed pursuant to section 668.11 who will testify with respect to the issues of **standard of care, breach of standard of care, or causation**. | *In any action for personal injury or wrongful death against a health care provider based upon the alleged negligence in the practice of that profession or occupation or in patient care, which includes a cause of action for which expert testimony is necessary to establish a prima facie case*, the plaintiff shall, prior to the commencement of discovery in the case and within sixty days of the defendant's answer, serve upon the defendant a certificate of merit affidavit signed by an expert witness with respect to the issue of **standard of care and an alleged breach of the standard of care**. |

By comparing these texts, we can see that there certainly were changes in the *content* requirements between the unenacted bills and the enacted statute. The unenacted bills would have required certificates to address three topics: "standard of care," "breach of standard of care," and "causation." The enacted statute only requires a certificate to address two topics: "standard of care" and "an alleged breach of the standard of care."

But there were no similar changes to the *triggering* language, shown in italics. In the unenacted bills and the enacted statute, the triggering language remained almost the same. Both versions use the same phrase, "prima facie case," which necessarily includes causation. This confirms that the legislature wanted the certificate of merit requirement to apply whenever a plaintiff needs an expert to establish causation.

---

[6]H.S.B. 105, 87th G.A., 2d sess., § 5(1)(*a*), (*b*)(4) (Iowa 2017) (emphases added); *see* S.S.B. 1087, 87th G.A., 2d sess., § 5(1)(*a*), (*b*)(4) (Iowa 2017); H.F. 487, 87th G.A. sess., § 3(1)(*a*), (*b*)(4) (Iowa 2017).

[7]Iowa Code § 147.140(1)(*a*) (emphases added).

**C. What About Reasonableness?** Finally, I turn to the majority's concern that "it makes no sense" for the legislature to require an expert's certification that there has been a breach of the standard of care if it appears that—at trial—the plaintiff will only need expert testimony to establish causation. I respectfully disagree.

First, it goes too far to say that the legislative scheme "makes no sense." One obvious purpose of section 147.140 is to dispose of meritless suits early. And there is a reasonable relationship between (1) the goal of disposing of meritless suits early and (2) requiring an expert's confirmation that a standard of care was breached. That's true even if—at trial—the plaintiff will only need expert testimony on causation. If a plaintiff's claims are complex enough that expert testimony will be needed to establish causation—that is, a causal link between *a breach of a standard of care* and a claimed injury—it's not unreasonable to want an expert to certify that *there really was* a breach of a standard of care.

Moreover, even if section 147.140 seems like an imperfect product of a messy legislative process, that doesn't mean that we shouldn't give effect to its words. *See, e.g.*, *In re BISYS Grp. Inc. Derivative Action*, 396 F. Supp. 2d 463, 464 (S.D.N.Y. 2005) ("Congress . . . alone is charged with making the close judgments and sometimes messy compromises inherent in the legislative process."). Even if its requirements are "counterintuitive"—even if they "seem[] contrary to the court's expectations"—we still must honor its "clear legislative language." *The*

*Sherwin–Williams Co. v. Iowa Dep't of Revenue,* 789 N.W.2d 417, 427 (Iowa 2010). As Judge Doyle rightly observed:

> "In a democracy, the power to make the law rests with those chosen by the people.' " *King v. Burwell,* 135 S. Ct. 2480, 2496 (2015). Even if we dislike the law or think some other approach might be a better policy, "[t]he role of [a court] is to apply the statute as it is written." *Burrage v. United States,* 134 S. Ct. 881, 892 (2014) . . . "If changes in a law are desirable from a standpoint of policy or mere practicality, it is for the legislature to enact them, not for the court . . . ." *U.S. Jaycees v. Iowa Civil Rights Comm'n,* 427 N.W.2d 450, 455 (Iowa 1988).

*In re Prop. Seized for Forfeiture from Thao,* No. 14–1936, 2016 WL 1130280, at *9 (Iowa Ct. App. Mar. 23, 2016) (alterations and second omission in original).

**IV. Conclusion.**

The unambiguous words of Iowa Code section 147.140 required the Estate to serve a certificate of merit affidavit. The Estate did not. So the district court was right to dismiss the Estate's case, and the court of appeals was right to affirm. We should affirm both courts. I respectfully dissent from part III.B.1–3 of the majority opinion, the reversal of the district court judgment, and the partial reversal of the court of appeals decision.

McDermott, J., joins this concurrence in part and dissent in part.